Argued January 13; affirmed January 26, 1943

# LYONS *v.* BROWNING ET AL.

(133 P. (2d) 599)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Glen R. Metsker,* of St. Helens, for appellant.

*James C. Dezendorf,* of Portland (Barge E. Leonard, of Portland, and Waldon W. Dillard, of St. Helens, on the brief), for respondents.

LUSK, J. This is an appeal from an order of the circuit court setting aside a judgment in favor of the plaintiff based on the verdict of a jury, and ordering a new trial.

The action was brought under § 20-2302, Oregon Code 1930, to recover damages caused by the defendants' dogs, which the plaintiff charged killed and mutilated his prize and valuable turkeys. The verdict was for $1,575, the full amount of damages alleged, and the sole question for review is whether a verdict in that amount is sustainable under the evidence.

The complaint alleged that the defendants' dogs "killed and destroyed twenty-five prize and valuable turkeys and mutilated and rendered valueless twenty-three additional prize and valuable turkeys", the property of the plaintiff, and "that six of said turkeys so destroyed and killed were of the value of $600 and that the remaining thirty-nine turkeys both killed and mutilated were of the value of $975." Thus, while it is alleged that forty-eight turkeys were killed or mutilated, the allegations of value refer to only forty-five turkeys, and the complaint demands judgment for $1,575, the value, as alleged, of forty-five turkeys.

The testimony developed that the six turkeys claimed to be worth $600 were toms, the reasonable market value of which, according to qualified witnesses for the plaintiff, was $100 each, and that the thirty-nine turkeys claimed to be worth $975 were hens, which, according to the same witnesses, had a reasonable market value of $25 each. The turkeys so killed and

mutilated by the defendants' marauding dogs were without doubt *rarae aves,* for no attempt was made on the trial to controvert these appraisements of their value, nor was the evidence criticized on the argument in this court. The only point made by the defendants in seeking to sustain the order setting aside the judgment, is that there is no evidence in the record that more than four toms were killed or destroyed, and hence the verdict was $200 in excess of any sum which the evidence will support.

With this contention we are compelled to agree. The plaintiff's brief refers us to no testimony that more than four toms were killed or destroyed, and, after a careful reading of the transcript, we have found none. In fact, the testimony affirmatively discloses that the exact number is four, not six.

Four witnesses testified as to the number of turkeys killed or mutilated. The testimony of Langdon, a deputy sheriff, may be disregarded, for he did not attempt to distinguish between toms and hens. Lee, an ex-employe of the plaintiff, who arrived on the scene shortly after the depredation, testified that twenty-three hens and one tom were killed outright, that some of the turkeys that were mutilated died later, and some had to be killed. He did not know how many, but he thought around ten or twelve. He said that there were fifty or sixty birds in two pens, three gobblers in one pen and two in the other, and that all but one was mutilated, scarred or killed. (The transcript reads "scared", but we think the witness said "scarred".) Schlemin, the plaintiff's foreman, swore that on the night of the day in question two toms and twenty-six hens were dead and that later two more toms were lost, that four toms altogether were lost.

The plaintiff testified:

"Q Mr. Lyons, how many toms did you lose as a result of the depredations committed by those dogs that morning?

"A Four * * * That is, we lost; there were others that were injured, but there was four either died or so badly mutilated they had to be killed."

The complaint, it will be remembered, alleges that six of said turkeys so *destroyed and killed* were of the value of $600. This allegation obviously refers to the toms. Nothing is claimed for the $100 birds which were *injured*, but only for those destroyed. But, even though it were otherwise, the plaintiff's case would not be helped, since there is no evidence that the injuries impaired the value of the turkeys injured, or, if so, to what extent.

■ In this state of the record the trial court, on motion of the defendants or on its own motion, was not only empowered, but it was its duty, to set aside the judgment and grant a new trial. The plaintiff argues that the court has no power to grant a new trial for excessive damages, citing *Johnson v. Ladd,* 144 Or. 268, 14 P. (2d) 280, 24 P. (2d) 17; *Gillilan v. Portland Crematorium Ass'n.,* 120 Or. 286, 249 P. 627; *Timmins v. Hale,* 122 Or. 24, 256 P. 770. But these decisions do not touch this case, for this is a case where "the court *can* affirmatively say there is no evidence to support the verdict". Constitution, Art. VII, § 3. It is a simple mathematical proposition that evidence of the destruction of four turkeys valued at $100 each will not support a verdict for $600, and it is simple justice to refuse to permit such a verdict to stand. There is nothing to the contrary in the Constitution, the statutes, or our decisions.

■ The fact that the matter was not called to the attention of the court during the trial, and that there was no request for an instruction limiting the jury in the assessment of damages to the amount proven, is of no importance, for one of the purposes of the new trial statute is to enable the trial judge to correct errors and to cure miscarriages of justice, notwithstanding the failure of counsel to make a record which would authorize this court to reverse the judgment on appeal. *King v. Ditto,* 142 Or. 207, 210, 19 P. (2d) 1100; *Seipp v. Howells,* 146 Or. 637, 31 P. (2d) 188; *Shain v. Meier & Frank Co.,* 140 Or. 518, 523, 13 P. (2d) 360; *Timmins v. Hale,* supra. The error in the instant case consisted in the trial court instructing the jury in effect that they were authorized to find a verdict for the plaintiff in the amount of $1,575 when the evidence would not support such a verdict.

■ Plaintiff contends that the grounds of the motion for a new trial, which were stated in the language of the statute, are too indefinite, and cites cases in which this court has affirmed the denial of a new trial for that reason. See, *Johnson v. Roberts,* 151 Or. 311, 317, 49 P. (2d) 455; *Easton v. Quackenbush,* 86 Or. 374, 168 P. 631. The rule of these decisions has no application to a case where the trial court, instead of denying, grants a new trial. *King v. Ditto,* supra.

■ It is suggested that this court enter up a judgment for the amount of damages properly allowable, but the evidence affords no adequate basis for disposing of the case in that manner. In addition to the erroneous allowance of damages already discussed, there is no evidence to justify a finding in the full amount of the value of the mutilated hens. The record discloses that the plaintiff's turkeys were the finest stock. He exhibited them in turkey shows in Oregon and other states

and took numerous prizes. It is necessary in these shows to exhibit both live and dressed birds, and the mutilated hens, it appears, were of no value for exhibition purposes in the dressed class because of the scars and tears. In addition to twenty-six hens which were killed on the first day others subsequently succumbed, but the plaintiff was unable to state definitely how many of the mutilated birds survived. The highest estimate in the evidence of the total number destroyed is thirty-five. The plaintiff testified that the hens "were mutilated to the extent for dress birds, we were unable to show them in future shows". But neither he nor any other witness testified that they were rendered valueless for any purpose whatever, such, for example, as for breeding or for sale on the market as food. For all that appears they still had value, though the extent thereof, and, therefore, the damage caused by their mutilation, cannot be determined.

The trial judge, in the order setting aside the judgment, directed that if the plaintiff within ten days should remit $775, the judgment should stand as to $800, the balance. Having no knowledge, apart from the evidence in the instant case, of the value of prize turkeys, we are unable to say what was the basis of this radical reduction in the amount of the judgment. Neither do we determine whether under our practice the circuit court may require the filing of a remittitur as a condition of avoiding a new trial. Assuming, as the plaintiff contends, that in this respect the order appealed from was erroneous, we hold that for the reasons herein stated the court properly exercised its power to set aside the judgment and grant a new trial, and the cause must, therefore, be remanded for further proceedings. It is so ordered.

The judgment is affirmed.